[Civ. No. 37517. Second Dist., Div. Five. June 23, 1971.]

In re the Marriage of LILLY G. AND ELIOT E. PADDOCK.
LILLY G. PADDOCK, Respondent, v.
ELIOT E. PADDOCK, Appellant.

## COUNSEL

Ross & Saunders for Appellant.

McCarroll & McCarroll and Mary H. McCarroll for Respondent.

## OPINION

**REPPY, J.**—This is an appeal from the division of community property effected by the trial court in its August 7, 1970, interlocutory judgment dissolving the marriage of petitioner (respondent on appeal) Lilly G. Paddock, and respondent (appellant on appeal) Eliot E. Paddock. The court found certain real property to be a community property homestead worth $25,828.08 and assigned that property absolutely to petitioner. The court then found the value of the rest of the community property to be in the amount of $16,220.02, and divided it equally between the two parties.

The issue on appeal is whether, under California law as it existed on August 7, 1970, the court erred in segregating the homestead from the rest of the community property and awarding it to one of the parties, and in then dividing the remaining community property equally rather than

dividing all of the community property, including the homestead, equally. We hold that the court was in error.

California Civil Code section 4800 (effective January 1, 1970 and in August of that year) provided in pertinent part: "The Court *shall*[1] . . . in its interlocutory judgment decreeing the dissolution of the marriage . . . divide the community property . . . of the parties equally. The equal division provisions of this section shall not prevent the court: (1) Where economic circumstances warrant, from awarding any asset to one party on such conditions as the court deems proper to effect a substantially equal division of the property." (Italics added.)

Civil Code section 4808 (effective January 1, 1970 and in August of that year), a restatement of provisions formerly contained in Civil Code section 146, provided in pertinent part: "In any judgment decreeing the dissolution of the marriage . . ., the court shall assign the homestead as follows: (a) If a homestead has been selected from the community property . . ., it may be assigned either absolutely or for a limited period to either party, subject, in the latter case, to the future disposition of the court, or it may, in the discretion of the court, be divided, or be sold and the proceeds divided."

Effective November 23, 1970, the Legislature repealed section 4808[2] and amended section 4800 to provide that the community property to be divided equally should include "any such property from which a homestead has been selected . . . ."[3]

Petitioner contends that the award of the homestead was authorized by section 4808, subdivision (a) as it existed at the time of judgment, and she relies on the rule that where a statute is free from ambiguity or uncertainty, it needs no construction and will be enforced as written. (*Stockton Sav. & Loan Bank* v. *Massanet*, 18 Cal.2d 200, 207 [114 P.2d 592]; 45 Cal.Jur.2d, Statutes, § 126, p. 635.) However, it seems to us that sections 4800 and 4808, subdivision (a) are ambiguous on the point at issue. One rational interpretation is that adopted by the trial court: that under section 4808, subdivision (a) a community property homestead may be awarded to either party without restriction by the equal division provisions of section 4800. Another reasonable interpretation is that adopted

---

[1]Family Law rule 1202(a), California Rules of Court, provides: " 'shall' is mandatory."

[2]Statutes 1970, chapter 962, section 5, page 1727.

[3]Statutes 1970, chapter 962, section 3.5, page 1726. Because of the repeal and amendment, this opinion will affect a very limited number of cases. Nevertheless, we believe it worthwhile to bring the opinion to the attention of the profession by publication.

by the later legislative amendment: that, although the homestead may be awarded to either party, it must be included in the total amount of community property to be divided equally.

Applying the rules of statutory construction, we have determined that the latter interpretation is the proper one.[4] Petitioner contends that section 4800 and section 4808, subdivision (a) are inconsistent and that therefore the more particular provision (§ 4808, subd. (a)) is paramount. (Code Civ. Proc., § 1859; *In re Williamson*, 43 Cal.2d 651, 654 [276 P.2d 593]; *Neuwald* v. *Brock*, 12 Cal.2d 662, 669 [86 P.2d 1047]; *Rose* v. *State of California*, 19 Cal.2d 713, 723-724 [123 P.2d 505]; 45 Cal.Jur.2d, Statutes, §§ 119-120, pp. 628-629.) However, under the interpretation we have adopted, the provisions are not inconsistent, and therefore the rule propounded by petitioner does not apply. (*County of Los Angeles* v. *Craig*, 52 Cal.App.2d 450, 453 [126 P.2d 448]; 45 Cal.Jur.2d, Statutes, §§ 119, 120, pp. 628, 629.) ■ Statutes should be construed so as to harmonize the various sections, and wherever possible seemingly conflicting provisions should be reconciled to avoid the declaration of an irreconcilable conflict. (*County of Los Angeles* v. *Craig, supra*, p. 452; *Pierce* v. *Riley*, 21 Cal.App.2d 513, 518 [70 P.2d 206]; 45 Cal.Jur.2d, Statutes, §§ 118, 121, pp. 627, 629.)

■ The primary and controlling consideration in the construction of statutes is the determination of legislative intent. (*Cal. Toll Bridge Authority* v. *Kuchel*, 40 Cal.2d 43, 53 [251 P.2d 4].) Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts. It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports. (*Maben* v. *Superior Court*, 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].) The Assembly Committee Report on the Family Law Act (Assembly Bill 530 and Senate Bill 252), which act included the provisions in question, stressed the importance of reducing acrimony by providing for equality in the division of property. (Assembly Daily Journal, August 8, 1969.) A "sup-

---

[4]Community property as used in section 4800 may properly include a community property homestead. We are aware of the history of the homestead statutes and realize that traditionally a community property homestead has been something of a beast apart from other community property. (See Civ. Code, § 1265, and its history; 40 C.J.S. Homesteads, § 92, p. 531; 25 Cal.Jur.2d, Homesteads, §§ 16-19, pp. 310-317.) However, our view of the present law, which respondent has not challenged, is that community property declared to be a homestead retains its community character for purposes of division on dissolution, although it has certain added characteristics by reason of being a homestead. (See Cal.Jur.2d, Homesteads, §§ 16-19, pp. 310-317; *Burkett* v. *Burkett*, 78 Cal. 310 [20 P. 715]; *Johnston* v. *Bush*, 49 Cal. 198; Civ. Code, § 4808.)

plement to [the] initial report" printed in the February 26, 1970, Assembly Daily Journal was issued, "to clarify the property division provisions of the Family Law Act by expressing the intent of the Legislature in enacting those provisions." It alluded to the fact that in those situations wherein the residence was the only substantial asset of a couple involved in marriage dissolution, the practice had developed of setting it aside as a homestead under the assumption that the court would have the power under section 4808, subdivision (a) to assign the residence to the spouse given custody of the children. The report stated that the recording of a homestead in such cases was contrary to legislative intent and unnecessary, and that an award of the homestead to the spouse with the children, subject to certain conditions (e.g., a lesser amount of support, or a lien in favor of the other spouse) could be accomplished under section 4800, subdivision 1 (quoted *supra*). Although this report is not directly pertinent, it does indicate a legislative intent that the family residence be treated as any other piece of community property.[5]

That the Legislature intended the community property homestead to be included within section 4800 is indicated by amendment of that section and repeal of section 4808. Although generally it is presumed that an amendment or repeal indicates an intent to substantially change the statute (*People v. Valentine*, 28 Cal.2d 121, 142 [169 P.2d 1]; *Clements v. T. R. Bechtel Co.*, 43 Cal.2d 227, 231-232 [273 P.2d 5]), surrounding circumstances may show that the change was prompted by a legislative desire to clarify, thus disclosing the previously clouded intent (*Union League Club v. Johnson*, 18 Cal.2d 275, 278-279 [115 P.2d 425]; *Martin v. California Mut. B. & L. Assn.*, 18 Cal.2d 478, 484 [116 P.2d 71]; *W. R. Grace & Co. v. Cal. Emp. Com.*, 24 Cal.2d 720, 729 [151 P.2d 215]). Subsequent legislation clarifying a statute does not change its meaning but merely supplies an indication of legislative purpose which may be considered together with other factors in arriving at the true intent existing at the time the statute was enacted. (*Flewelling v. Board of Trustees*, 178 Cal.App.2d 168, 172 [2 Cal.Rptr. 891]; *Stockton Sav. & Loan Bank v. Massanet, supra*, 18 Cal.2d 200, 204.)

At times a legislature is held to have set a meaning by the inclusion or exclusion of distinctive words well defined in the law, and a later modification, although it may have been a move to install the original intent, is

[5]Appellant's brief includes a copy of a letter, dated July 1, 1970, from James A. Hayes, Chairman of the Assembly Committee on Judiciary, to appellant's attorney. This letter however is not an official statement of legislative intent and has not been considered by us as a factor in our determination.

classified as a change.[6] However, we do not feel that that is the situation at hand.

The circumstances here militate for clarification rather than change. One factor is the short period of time which elapsed between the original enactment (effective January 1, 1970) and the amendment (effective November 23, 1970). Also, here, the language in both the original statute and amendment (unlike the ones in *Anderson, supra* (see fn. 6, *supra*)) is susceptible of the same construction, one that best furthers the legislative goal, ascertained from the act itself as well as from committee reports, of equal division of the community property.[7]

Petitioner argues that, accepting the proposition that a homestead is not exempted from the intendments of section 4800, it can be considered

---

[6]In *Anderson* v. *I. M. Jameson Corp.,* 7 Cal.2d 60, 67-68 [59 P.2d 962], cited by petitioner, the court refused to interpret "presumption," as used in a statute, to include "inference," where two years after the enactment of the original statute the Legislature had amended the provision in question by adding "inference." The court stated that the two words have well recognized and distinctly different legal meanings, and that even if the Legislature thought the term "presumption" would include the term "inference," that was not so. The statute as enacted did not contain the latter term and the court could not depart from the meaning of language which is free from ambiguity. The 1935 legislative amendment, indicated that "the legislature realized that it had not included the word 'inference' in the 1933 provision, and that the insertion of said term was a legislative function."

[7]The considerations discussed in our opinion favoring the result we have reached outweigh certain countervailing factors:

(1) The anomaly of the apparent authority of the court, under section 4808, subdivision (b), to award a life estate in the homestead on the separate property of one of the parties to the other party without its value being considered in the equal division of community property, and the fact that the repeal of section 4808 apparently changed, rather than clarified, the law in that respect. We assume that in enacting section 4808, subdivision (b) the Legislature took into consideration the inherent difference between community and separate property and the desirability of allowing the spouse with custody of the children to remain in the family home.

(2) The evaluation complication created by the section 4808, subdivision (a) provision authorizing the award of a homestead for a limited period of time. Although allocating a capitalized value to such a limited interest (which it would appear the Legislature intended should be done) might be somewhat difficult, it is not infeasible. An award with such a limitation can still be made under the new statute which requires the homestead to be counted in the equal division.

(3) Under our interpretation, 4808, subdivision (a) adds nothing to 4800. There is a presumption that the Legislature in enacting a provision did not indulge in an idle act. (*Clements* v. *T. R. Bechtel Co.,* 43 Cal.2d 227, 233 [273 P.2d 5]; 45 Cal.Jur. 2d, Statutes, § 99, p. 613.)

(4) The February 26, 1970, committee report states that section 4808 "was meant to have no broader application nor utility than did its predecessor under the old law (former Civ. Code, § 146)." Under old section 146 a homestead was treated separately from other community property and apparently could be awarded to an innocent party in addition to half of the community property. (See *Smith* v. *Smith,* 124 Cal. 651 [57 P. 573]. Note also, however, that under the new law we no longer have innocent parties to be rewarded.)

that the trial court made a "substantially equal" division of community property as allowed by section 4800, subdivision (1). As indicated by petitioner, the committee reports say that under section 4800, subdivision (1) one party may be granted a substantial community asset with accommodations in the payment of support (§ 4801) to compensate the other party. Petitioner points to the fact that she was not awarded any support money after a 22-year marriage, suggesting that this was an accommodation to respondent. However, the court specifically found that neither petitioner nor respondent "is in need of spousal support from the other" and that "[p]etitioner is an able-bodied person earning sufficient funds to support herself." From these findings, the large discrepancy in the two awards, and the uncertainty surrounding the governing statutes at that time, it appears that the trial court did not intend to order a substantially equal division of the community property, including the homestead.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 18, 1971.